**In re Ronald E. DaSHIELL, Debtor.**

**Ronald E. DaSHIELL, Plaintiff,**

v.

**OHIO CITIZENS BANK and Diamond's Men's Clothing, Defendants.**

**Bankruptcy Nos. 88-0308, 83-01631.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

July 27, 1990.

Opinion on Damages Jan. 4, 1991.

244

Gordon R. Barry, Toledo, Ohio, for plaintiff.

Barry E. Savage, Toledo, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Hearing on Motion of Ohio Citizens Bank for Relief from Judgment and to Stay Enforcement of Judgment. At the Hearing, the Court allowed both counsel the opportunity to file Memoranda of law on the issues presented in this case. The Court has reviewed the evidence and arguments presented at the Hearing, and the written Memoranda of counsel, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that the Motion of Ohio Citizens Bank for Relief from Judgment and to Stay Enforcement of Judgment should be granted in part and denied in part.

## FACTS

The facts necessary for the Court's decision in this case do not appear to be in dispute. On October 4, 1988, the Debtor–Plaintiff filed an Adversary Complaint against Ohio Citizens Bank and Diamond's Men's Clothing. The Debtor filed his Chapter 7 Petition on September 15, 1983, and the discharge was granted in March of 1984. The Complaint alleges that Ohio Citizens Bank obtained judgments and perfected liens on the Debtor's real estate on or about December 8, 1983, in violation of the automatic stay.

The Debtor served Ohio Citizens Bank by certified mail with the Complaint and Summons and Notice of Pre–Trial Conference. Service was directed to the post office box

the Debtor had previously used to make payments to the Bank. An employee of the Bank signed the "green card", acknowledging receipt of service. The "green card" reflects that the letter was addressed to "Ohio Citizens Bank", and not to any specific officer or employee.

Both Defendants failed to file an Answer, and did not appear at the scheduled Pre-Trial. Subsequently, the Debtor filed a Motion for Default Judgment against the Bank and Diamond's Men's Clothing. Following this Court's usual procedure, a Hearing on the Motion for Default Judgment was scheduled. Notice of the Hearing was sent by the Court to Ohio Citizens at the same post office box address.

Ohio Citizens Bank failed to appear for the Hearing on Plaintiff's Motion for Default Judgment, and a Judgment Entry was signed. The Judgment Entry avoided the lien, and granted judgment, jointly and severally, against Ohio Citizens Bank and Diamond's Men's Clothing in the sum of Fifteen Thousand Dollars ($15,000.00).

Approximately a month after the Court signed the Default Judgment Entry, Ohio Citizens Bank filed a Motion for Relief from Judgment and to Stay Enforcement of Judgment. The Bank cited Federal Rules of Civil Procedure 60 and 62 as the grounds for relief. The Bank's Motion was set for Hearing, and the Court heard the arguments of counsel and received testimony from Terrence Degnan, the designated agent for service of process for Ohio Citizens Bank.

Unfortunately, during the Hearing, the parties only addressed one method of service under the Federal Rules of Civil Procedure. It appears that while researching his Memoranda, Counsel for the Debtor realized that the Ohio Rules of Civil Procedure are made applicable in federal cases by way of a specific provision in the Federal Rules. However, neither party addressed the affect of the provisions of Bankruptcy Rule 7004.

During his testimony, Mr. Degnan stated that the officers of Ohio Citizens had no knowledge of having received the Summons and the Complaint. He provided no information about the person who signed the return receipt. Mr. Degnan also could not enlighten the Court as to the Bank's procedure in dealing with mail sent to the post office box, except that he believed it was taken to the mail room at Ohio Citizens' main office.

At the Hearing, the Court took judicial notice of its own procedures, and noted that the Bank's post office box was the address Ohio Citizens listed on its claims filed in local Bankruptcy cases. For more than a decade, dividend checks have been sent to Ohio Citizens at the post office box address. In addition, it is the address to which most Bankruptcy notices are sent, unless the Debtor's schedules specify a different location. *See*, Bankruptcy Rule 2002(g). Thus, notices of filings and deadlines, and hearings have been sent to this post office box. Further, counsel for the Debtor indicated that his loan payments were directed to the post office box, and that is why that address was listed in the Debtor's schedules.

## LAW

■ Ohio Citizens Bank seeks to have this Court set aside the default judgment entered against it in the earlier proceedings. The grounds for setting aside a default judgment are set forth in F.R.Civ.P. 55(c), which provides:

(c) **Setting Aside Default.** For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Federal Rule of Civil Procedure 60(b) lists the criteria for relief from judgment:

**Rule 60.  Relief from Judgment or Order.**

(b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On Motion of and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evi-

dence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable˜ that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

The Sixth Circuit has addressed the standard to be applied in a proceeding to set aside a default judgment:

In considering a motion to set aside entry of a judgment by default a district court must apply Rule 60(b) "equitably and liberally ... to achieve substantial justice." *Blois v. Friday,* 612 F.2d 938, 940 (5th Cir.1980) (per curiam). Judgment by default is a drastic step which should be resorted to only in the most extreme cases. Where default results from an honest mistake "rather than willful misconduct, carelessness, or negligence" there is especial need to apply Rule 60(b) liberally. *Ellingsworth v. Chrysler,* 665 F.2d 180, 185 (7th Cir. 1981).

*United Coin Meter Co., Inc. v. Seaboard Coastline Railroad,* 705 F.2d 839, 844–845 (6th Cir.1983).

The *United Coin* opinion goes on to quote the three factors which control the decision of a Rule 55(c) motion, as listed in the Third Circuit case, *Feliciano v. Reliant Tooling Co., Ltd.,* 691 F.2d 653, 656 (3rd Cir.1982):

1. Whether the plaintiff will be prejudiced;

2. Whether the defendant has a meritorious defense; and

3. Whether culpable conduct of the defendant led to the default.

*United Coin,* 705 F.2d at 845.

Looking at the first factor, it might be argued that vacating the entire Default Judgment might prejudice the Debtor to some degree. However, vacating the damages portion of the Judgment would not appear to work any substantial hardship. Thus, under the liberal rule of construction expressed in *United Coin,* this factor appears to weigh in favor of setting aside at least the award of damages.

The second factor concerns the existence of a meritorious defense. In its pleadings, Ohio Citizens failed to recite anything more than an allegation that some unspecified meritorious defense existed. This appears to be contrary to the requirements found in the case law. *See, e.g., Interior Finish Contractors Assoc. of Delaware Valley v. Drywall Finishers Local Union No. 1955,* 625 F.Supp. 1233, 1239 (E.D.Pa.1985) (a meritorious defense is shown if the "allegations of defendant's answer, if established at trial, would constitute a complete defense to the action"); *In re Earle Industries, Inc.,* 67 B.R. 822, 824 (Bankr.E.D.Pa. 1986) (conclusory statements insufficient to establish the existence of a meritorious defense). Nevertheless, the Court will consider the statements of Ohio Citizens' counsel at the Hearing. Those statements indicated that the Bank's defense went solely to damages. Essentially, it appears that the Bank contends that the actual damages in this case should be lowered because the Bank's liens were placed on property which had already been in foreclosure, and in which the Debtor had very little, if any, equity.

Again, under the *United Coin* standard, the meritorious defense factor appears to support, to some degree, vacating the damages portion of the earlier Default Judgment.

■ The final factor to be considered is whether or not culpable conduct of the defendant led to the default. Most of the arguments presented at the Hearing dealt with the issue of the method of service used by the Plaintiff. Clearly, if proper service were not made, the Bank's conduct could not be considered culpable. In addition, under the second factor, the inadequacy of service of process would appear to be a meritorious defense when actual notice has not been received. More fundamental-

ly, the Court notes that a lack of proper service, when coupled with the absence of actual notice would also fit within F.R. Civ.P. 60(b)(4)'s specific exception for void judgments. *See generally*, 11 C. Wright & A. Miller, Federal Practice and Procedure § 2862 at 197–201 (1973). In any event, the Court will primarily address the question of proper service as it relates to Ohio Citizens Bank's culpability under the *United Coin* factors.

■ The Bank contends that service was not proper because it did not comply with the requirements set forth under Federal Rule of Civil Procedure 4(d)(3). The Plaintiff disagrees, contending that service was made in compliance with Federal Rule of Civil Procedure 4(c)(2)(C)(i). The Bankruptcy Rules generally govern the use of the Federal Rules of Civil Procedure in Bankruptcy cases. Bankruptcy Rule 7004(a) states in pertinent part:

**Rule 7004. Process; Service of Summons, Complaint.**

**(a) Summons; Service; Proof of Service.** Rule 4(a), (b), (c)(2)(C)(i), (d), (e) and (g)–(j) F.R.Civ.P. applies in adversary proceedings. . . .

Federal Rule of Civil Procedure 4(d)(3) provides:

**(d) Summons and Complaint: Person to be Served.** The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

\*　　\*　　\*　　\*　　\*　　\*

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

At the Hearing, the Plaintiff asserted that the Ohio Citizens Bank did not present evidence, as was its burden under F.R. Civ.P. 60(b), that the person who signed the "green card" was not an agent of the Bank. Nevertheless, based on the testimony presented, it appears Ohio Citizens Bank was not properly served under Federal Rule of Civil Procedure 4(d)(3). The Federal Rule for service on a corporation uses the terms "person making service" and "delivery", which does not appear to include service by mail. *See*, 4A C. Wright & A. Miller, Federal Practice and Procedure, § 1094 at 68 (1987); F.R.Civ.P. 4(c)(2)(C)(ii); *also cf., Madden v. Cleland*, 105 F.R.D. 520, 523 (N.D.Ga.1985).

The Federal Rules of Civil Procedure contain a specific section detailing the requirements for mailing service of process. *See*, F.R.Civ.P. 4(c)(2)(C)(ii). It should be noted that this provision is not made applicable to bankruptcy cases by Bankruptcy Rule 7004. It is not necessary for purposes of this decision to address the question of the effect of service of process made under F.R.Civ.P. 4(c)(2)(C)(ii) because, in this case, the Plaintiff did not comply 4(c)(2)(C)(ii)'s requirement that "two copies of a notice and acknowledgment form conforming substantially to form 18–A" be included with the summons and complaint. *See*, F.R.Civ.P. 4(c)(2)(C)(ii); *Norlock v. City of Garland*, 768 F.2d 654, 655 (5th Cir.1985); *Abdel–Latif v. Wells Fargo Guard Services, Inc.*, 122 F.R.D. 169, 172–173 (D.N.J.1988).

Bankruptcy Rule 7004(b) lists separate mailing rules for service of process in adversary proceedings. *See*, Bankruptcy Rule 7004(b)(3); Advisory Committee Note to 7004(b) (formerly Bankruptcy Rule 704(c)).

Rule 7004(b)(3) directs:

**(b) SERVICE BY FIRST CLASS MAIL.** In addition to the methods of service authorized by Rule 4(c)(2)(c)(i) and (d) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

\*　　\*　　\*　　\*　　\*　　\*

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

■ In this case, service was not properly made under 7004(b)(3) because the Summons and Complaint were not sent "to the attention" of an officer, nor one of the listed agents. Rather, it was addressed only to the corporation. When parties have received actual notice, the standards for service on individuals and corporations are to be liberally construed. *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2nd Cir.1972); *In re Outlet Department Stores, Inc.*, 49 B.R. 536, 540 (Bankr.S.D.N.Y.1985). However, in this case, Ohio Citizens' agent testified that no senior executive at the Bank had actual notice of this action. Accordingly, the rule of liberal construction would not be applicable. Thus, the Plaintiff having failed to comply with the statutory requirements set forth in Bankruptcy Rule 7004, service was not adequate under its provisions.

■ However, it is the Plaintiff's primary position that service was properly made according to Federal Rule of Civil Procedure 4(c)(2)(C)(i), which states:

(C) A summons and complaint may be served upon a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule—

(i) pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State; ...

This provision of the Federal Rules specifically sanctions the use of state methods of service. *E.E.O.C. v. Pettegrove Truck Service, Inc.*, 123 F.R.D. 354, 355 (S.D.Fla. 1988); *Leab v. Streit*, 584 F.Supp. 748, 759

(S.D.N.Y.1984). Further, F.R.Civ.P. 4(c)(2)(C)(i) is made applicable in adversary proceedings by Bankruptcy Rule 7004(a), which is reprinted above. Thus, Plaintiff argues that because service was properly made in accordance with the Ohio Rule of Civil Procedure governing the service of process upon a corporation, the requirements imposed by F.R.Civ.P. 4(c)(2)(C)(i) have been met.

■ Ohio Rule of Civil Procedure 4.2(6) reads as follows:

**Civ R 4.2**

**Process: who may be served**

Service of process, except service by publication as provided in Rule 4.4(A), pursuant to Rule 4 through Rule 4.6 shall be made as follows:

\*  \*  \*  \*  \*  \*

(6) Upon a corporation either domestic or foreign: by serving the agent authorized by appointment or by law to receive service of process; *or by serving the corporation by certified mail at any of its usual places of business;* or by serving an officer or a managing or general agent of the corporation; ... (emphasis added).

The Ohio Supreme Court has held that under Ohio Civil Rule 4.2(6), a corporation may be properly served by certified mail at any of its usual places of business, even though the summons and complaint are not specifically addressed to any officer or agent of that corporation. *Samson Sales, Inc. v. Honeywell, Inc.*, 66 Ohio St.2d 290, 421 N.E.2d 522 (Ohio 1981). Thus, the issue before the Court is whether or not the specific post office box is one of Ohio Citizens Bank's "usual places of business".

As a preliminary matter, the Court notes that the Ohio Rule is stated in the plural, referring to "usual place*s*" of business. In both the federal and state rules for service of process there are numerous examples of language restricting the place of service to a single location. *See, e.g.*, F.R. Civ.P. 4(d)(1) (service at "dwelling house or usual place of abode"); O.Civ.R. 4.2(9) (service on a professional association "at the place where the corporate offices are main-

tained"). Thus, the use of the Ohio legislatures use of the plural term must be presumed to have been intentional.

The determination of whether Ohio Citizens' post office box is one of its usual places of business seems to be a question of fact in Ohio. There does not appear to be any *per se* rule that a post office box cannot be a "usual place of business". *Cf., Alberti v. Brown,* slip. op., 1986 WL 11944 (Ohio App. Oct. 24, 1986).

At the Hearing, the Court took judicial notice of its records which indicate that Ohio Citizens Bank receives its Bankruptcy notices at the post office box in question, unless a debtor's petition specifies a different address. Also noted was the Bank's use of the post office box address on its proofs of claim file with this Court, which in turn result in the issuance of Bankruptcy dividend checks to Ohio Citizens Bank at that address. Debtor's counsel also indicated that Mr. DaShiell had made his loan payments to this particular post office box.

The testimony of the Bank's statutory agent for service of process, Terrence Degnan, indicated that he believed the Bank's usual practice was to take the day's mail from the post office box back to the mail room at Ohio Citizens' main office. Therefore, it would appear that the actual result of mailing the summons and complaint to the post office box would have been the same as if it had been sent directly to the Bank's main office. Mr. Degnan could not provide any information on the person who signed the return receipt. He did state that the person who signed the "green card" was not an officer, or designated agent for service of process.

Based on the testimony present, the Court finds that Ohio Citizens' post office box was one of its "usual places of business" under the Ohio Rule of Civil Procedure 4.2(6). Accordingly, service of process was properly made under the Ohio Rules of Civil Procedure.

■ However, service of process must satisfy both the statute under which service is effectuated and constitutional due process. *Ackermann v. Levine,* 788 F.2d 830, 838 (2nd Cir.1986); *Southern Pride,*

*Inc. v. Turbo Tek Enterprises, Inc.,* 117 F.R.D. 566, 569 (M.D.N.C.1987). The Court finds that the method of service provided for by Ohio law does not violate the requirements of due process. The mailing of the summons and complaint to the Bank's post office box was "reasonably calculated" to apprise the defendant of the pending action. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950); *also cf., Virginia Lime Company v. Craigsville Distributing Company, Inc.,* 670 F.2d 1366, 1368 (4th Cir.1982); *KDI Precision Products, Inc. v. Radial Stampings, Inc.,* 620 F.Supp. 786, 792 (S.D.Ohio 1985); *Samson Sales, Inc. v. Honeywell, Inc.,* 66 Ohio St.2d 290, 293–294, 421 N.E.2d 522, 524 (Ohio 1981).

Nevertheless, the fact that service was proper is only the first step in determining whether the conduct of Ohio Citizens Bank was "culpable" under the *United Coin* test. Ohio Citizens' representative testified that notice was not received by the persons charged with the responsibility for handling lawsuits against the Bank. While the Court believes that the problem in this case was similar to that in *Samson, supra,* involving not the address used for service, but rather the Bank's handling of its mail, it does not necessarily follow that Ohio Citizens was culpable under *United Coin.*

■ The cases construing the "culpable conduct" factor appear to require conduct far beyond what is commonly termed negligence. To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings. *Shepard Claims Service, Inc. v. William Darrah & Associates,* 796 F.2d 190, 194 (6th Cir.1986); *Allstate Insurance Co. v. Hall,* 115 F.R.D. 491, 493 (E.D.Mich.1986). Based on the evidence presented in this case, Ohio Citizens' failure to respond does not rise to the level of reckless disregard.

It should be noted that even in cases where the defaulted defendant has been found culpable, if the other two *United*

*Coin* factors weigh in favor of vacating a default judgment, the judgment must be set aside. *See, Berthelsen v. Kane*, 907 F.2d 617 (6th Cir.1990) (default judgment vacated despite finding that defendant had consciously and willfully evaded service of process). As the Third Circuit Court of Appeals has stated: "We recognize, however, that this court does not favor entry of defaults or default judgments. We require doubtful cases to be resolved in favor of the party moving to set aside the default judgment so that cases may be decided on their merits." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–195 (3rd Cir.1984).

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether they are specifically mentioned in this Opinion.

Accordingly, Court finding that the Plaintiff will not be prejudiced, that Ohio Citizens has stated a "meritorious defense" to the damages portion of the default judgment, and that the Bank's conduct was not "culpable", it is

ORDERED that the Motion of Ohio Citizens for Relief from Judgment and to Stay Enforcement of Judgment be, and is hereby, granted in part, and denied in part.

It is FURTHER ORDERED that the portion of the default judgment awarding money damages against Ohio Citizens Bank be, and is hereby, Vacated.

It is FURTHER ORDERED that a Hearing on the amount of damages to be awarded to Ronald E. DaShiell by Ohio Citizens Bank be, and is hereby, set for Wednesday, August 22, 1990 at 11:30.

## ON DAMAGES

This cause comes before the Court after Hearing on Damages to be Awarded to Ronald DaShiell by Ohio Citizens Bank. At the Hearing, the Court allowed both parties to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the evidence and arguments presented, as well as the entire record in this case.

Based on that review, and for the following reasons, the Court finds that Ohio Citizens Bank should pay Ronald DaShiell One Thousand Five Hundred Thirteen Dollars ($1,513.00) in compensatory damages and Five Hundred Dollars ($500.00) in punitive damages for its violation of stay.

## FACTS

On July 27, 1990, the Court Granted Ohio Citizens Bank's (hereinafter Ohio Citizens) Motion for Relief from Judgment and to Stay Enforcement of Judgment in part. The Court vacated the default judgment awarding money damages against Ohio Citizens and ordered a Hearing on the damages issue.

At the Hearing, the following facts were presented. On September 15, 1983, Ronald DaShiell, the Debtor, filed for Bankruptcy. On or about, December 8, 1983, Ohio Citizens, the Defendant, obtained a judgment lien on the Debtor's real estate in violation of the Section 362 automatic stay. The real estate was rental property belonging to the Debtor. On March 14, 1989, the Court ordered these liens released, but Ohio Citizens failed to release the liens until May 30, 1989.

The Debtor testified that on, or about, April 14, 1988, he made a Two Thousand Five Hundred Dollar ($2,500.00) deposit on a condominium in Wisconsin and a One Hundred Fifty-five Dollar ($155.00) deposit on a mortgage application for the condominium. He further testified that on, or about, May 16, 1988, he was informed that his request for a mortgage was denied due to Ohio Citizen's outstanding judgment lien on the Debtor's rental property, and that his deposit would not be returned. The Debtor testified that he consistently attempted to discuss the lien with Mr. Barry Savage, legal counsel for Ohio Citizens, between May and September; however, Mr. Savage was never available to discuss the matter.

Mr. DaShiell testified that he contacted two other loan institutions in an attempt to obtain a mortgage. He testified that he made a One Hundred Fifty-three Dollar ($153.00) deposit with his application to

Trustcorp and that he made a One Hundred Fifty-five Dollar ($155.00) deposit with his application to Marine Bank. Neither of these deposits were recovered.

The Debtor testified that he calculated his total loss due to the Defendant's lien to be Sixteen Thousand Seven Hundred Fifty-one Dollars and Eighty-four Cents ($16,-751.84) which included depreciation loss on his rental property, loss of tax refunds, as well as the lost deposits.

When questioned by the Defendant's counsel, the Debtor admitted that Ohio Citizens had not attempted to collect on the lien, but only that the lien prevented him from obtaining a mortgage. Mr. DaShiell further admitted that Trustcorp had foreclosed on an earlier mortgage and that he is still paying Trustcorp as part of the settlement of that foreclosure action, which has been dismissed. Counsel for the Defendant contended that Ohio Citizens' lien was not the only lien on the property and that Ohio Citizens was not entirely at fault for Debtor's failure to obtain another mortgage, and as such, damages should not be awarded.

The Debtor failed to present any documentation of his damages at the Hearing, such as receipts for the deposits or copies of correspondence to Mr. Savage. The Debtor testified that his failure to produce documentation was because those items were still in storage from the Debtor's move to New Jersey. Counsel for the Debtor indicated that he has expended an excess of fifteen (15) hours in legal services in this proceeding.

### LAW

Section 362 of the Bankruptcy Code provides that

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(4) any act to create, perfect, or enforce any lien against property of the estate;

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362.

Subsection (b) of Section 362 is not applicable to the facts presented. Counsel for the Defendant asserted at the Hearing that the Debtor failed to present evidence that Ohio Citizens took any action toward enforcing their lien and as such damages should not be awarded. A review of the relevant code section does not appear to support the Defendant's position. Section 362 of the Bankruptcy Code is not limited to those acts to enforce a lien, but rather it is expanded to include those acts to "create, perfect, *or* enforce" a lien. 11 U.S.C. § 362 (emphasis added). On December 8, 1983, approximately two and one half months after the Bankruptcy petition was filed, the Defendant obtained judgment liens on property of the estate. By their conduct, Ohio Citizens took action to create a lien on the real estate belonging to the estate and therefore violated the automatic stay. Whether Ohio Citizens took steps to enforce their lien is not relevant.

For the Debtor to be entitled to the damages, a willful violation must have occurred. Willful violation has been interpreted by the courts as "any deliberate act taken in violation of a stay, which the violator knows to be in existence," and that "[a]n additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. section 362(h)." *Carroll v. Tri–Growth Center City, Ltd.*, 903 F.2d 1266, 1272 (9th Cir. 1990); *Crysen/Montenay Energy Co. v. Esselen Associates, Inc.*, 902 F.2d 1098, 1105 (2nd Cir.1990); *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989). Ohio Citizens was listed as a creditor on the Debtor's petition and as such received notice of the bankruptcy and applicable stay. Despite such notice, the Defendant persisted in obtaining a judgment lien against the Debtor.

Although the Debtor did not present evidence documenting his actual damages, the

Court is awarding him, based on his testimony, the money lost on the deposits on the mortgages applications and attorney's fees, but not the down-payment on the condominium. The Debtor lost three deposits, totaling Four Hundred Sixty-three Dollars ($463.00). The Court is awarding attorney's fees in the amount of One Thousand Fifty Dollars ($1,050.00). Additionally, the Court is awarding Five Hundred Dollars ($500.00) in punitive damages for Ohio Citizens' refusal to remove the lien until after the Court ordered them to do so.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Therefore, it is

ORDERED that the Defendant shall remit to the Plaintiff Four Hundred Sixty-three Dollars ($463.00) in compensatory damages.

It is FURTHER ORDERED that the Defendant shall remit to the Plaintiff One Thousand Five Hundred Thirteen Dollars ($1,513.00) in attorney's fees.

It is FURTHER ORDERED that Defendant shall remit to the Plaintiff Five Hundred Dollars ($500.00) in punitive damages.